UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JAMES NIKITAS, | ) | No. 04 B 18560 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CLEAR CHANNEL OUTDOOR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 A 3430 |
| | ) | |
| JAMES NIKITAS, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

This matter is before the court on the motion of Clear Channel Outdoor, Inc. ("Clear Channel") for summary judgment on its adversary complaint against debtor James Nikitas. Clear Channel contends that facts determined in an arbitration render Nikitas' debt to Clear Channel nondischargeable as a debt based on fraud, see 11 U.S.C. § 523(a)(2)(A), and that Nikitas is collaterally estopped to relitigate those facts. For the reasons that follow, Clear Channel's motion for summary judgment is denied.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## 2. Facts

The following facts appear to be undisputed. Clear Channel is in the business of marketing and placing advertising on what it terms "outdoor media" – also known as "signs." Nikitas was president and principal shareholder of an entity called London Limousines ("London"). In 1998, Clear Channel entered into an agreement with London. Under the agreement, Clear Channel paid $550,000 for advertising space on double-decker tour buses that London represented it owned and operated in New York. It turned out, however, that London did not in fact own any double-decker buses in New York. On making this discovery, Clear Channel rescinded the agreement and demanded its money back from London – and from Nikitas, who had guaranteed the payment of certain sums due upon the agreement's termination.

When Nikitas and London failed to pay Clear Channel the amounts it demanded, Clear Channel served Nikitas and London with an arbitration demand, as it was entitled to do under the agreement. In response, a lawyer identifying himself as counsel for Nikitas contacted Clear Channel and attempted to settle the dispute. When the dispute did not settle, Clear Channel filed an action in the Circuit Court of Cook County to compel arbitration. Neither Nikitas, London, nor counsel for either one appeared in the action, but the same lawyer purporting to represent Nikitas again contacted Clear Channel to discuss a possible settlement. Still the matter did not settle, and the circuit court entered an order compelling the arbitration.

In August 2002, the arbitrator convened a hearing. Although Nikitas and London had notice of the hearing, they failed to appear, answer, or participate. Despite their absence, Clear Channel submitted evidence – documents and witnesses – at the hearing. On the basis of that evidence, the arbitrator issued an award finding that Nikitas and London had fraudulently induced Clear Channel to enter into the agreement. The arbitrator rescinded the agreement and

-2-

awarded Clear Channel $550,000, along with $10,049 in attorneys' fees and costs.

Clear Channel then returned to the circuit court and moved to confirm the arbitration award. Nikitas and London had notice of the motion but did not appear. The circuit court accordingly entered judgment confirming the award.

When Clear Channel took steps to collect its judgment, Nikitas sought protection under chapter 7 of the Bankruptcy Code. In August 2004, Clear Channel commenced this adversary proceeding asserting under section 523(a)(2)(A) that Nikitas' debt established in the arbitration proceeding was nondischargeable. Clear Channel now moves for summary judgment on its complaint.[1/] Clear Channel contends that summary judgment should be entered based on the doctrine of collateral estoppel (or issue preclusion, as it is known these days).[2/]

### 3. Discussion

Clear Channel is not entitled to summary judgment. Under Illinois law, collateral estoppel applies only to matters "actually litigated" in an earlier proceeding. Because a default judgment was entered against Nikitas in the arbitration and in the circuit court, his fraud was not "actually litigated." Therefore, the findings of the arbitrator have no collateral estoppel effect here.

---

[1/] Nikitas appeared in the adversary proceeding *pro se* and filed an answer. He also had notice of the summary judgment motion and was in court when the briefing schedule was set. True to form, however, Nikitas has not responded to the motion.

[2/] Clear Channel relies on collateral estoppel because nondischargeability under section 523(a)(2)(A) is a matter within the exclusive jurisdiction of the bankruptcy court and cannot be raised in state courts. *See* 11 U.S.C. § 523(c)(1). If that were not the case, the arbitration award and subsequent circuit court judgment would arguably be res judicata. (And if they were, it would make no difference that the award and judgment had been entered by default. *See Housing Auth. v. Y.M.C.A. of Ottawa*, 101 Ill. 2d 246, 254, 461 N.E.2d 959, 963 (1984).)

As Clear Channel correctly notes, objections to dischargeability under section 523 can be based on collateral estoppel. *Grogan v. Garner*, 498 U.S. 279, 284-85 n.11 (1991). Whether the relevant collateral estoppel principles are state or federal, however, depends on whether the judgment claimed as preclusive is state or federal. Federal courts are obligated to give state judicial proceedings the "same full faith and credit" those proceedings would have in the courts of that state. 28 U.S.C. § 1738. Hence, "the preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law." *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) (internal quotation omitted). Because Clear Channel relies on the findings of an Illinois state court – or more accurately an Illinois arbitrator whose findings an Illinois state court confirmed – Illinois law on collateral estoppel presumably governs.[3]

Under Illinois law, collateral estoppel applies "when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389-90, 757 N.E.2d 471, 477 (2001). The doctrine has three basic requirements: (1) a prior case presented an identical issue; (2) the case ended in a final judgment; and (3) the party against whom estoppel is asserted was a party to the case. *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 195 Ill. 2d 71, 77, 744 N.E.2d 845, 849 (2001).

Collateral estoppel only applies, however, to a "point or question *actually litigated* and

---

[3] If Clear Channel believes some other law governs, it does not say so. When parties do not make an issue out of choice of law, the court has no obligation to undertake its own independent investigation. *In re Stoecker*, 5 F.3d 1022, 1029 (7th Cir. 1993).

determined." *Y.M.C.A.*, 101 Ill. 2d at 252, 461 N.E.2d at 962 (emphasis in original) (internal quotation omitted); *see also People v. Williams*, 138 Ill. 2d 377, 393, 563 N.E.2d 385, 392 (1990) (noting that collateral estoppel is limited to "the precise factual or legal issues actually litigated and decided"). "Actually litigated" does not mean "thoroughly litigated," but it does mean "that the parties disputed the issue and the trier of fact resolved it." *Taylor v. Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 663, 656 N.E.2d 134, 141 (1st Dist. 1995); *see also Raper v. Hazelett & Erdal*, 114 Ill. App. 3d 649, 653, 449 N.E.2d 268, 271 (1st Dist. 1983).

In this case, the judgment confirming the award was a final judgment. *See Norman Kern & Co. v. McNabola (In re McNabola)*, 43 B.R. 362, 364 (Bankr. N.D. Ill. 1984) (noting that arbitration award can be a final judgment for purposes of collateral estoppel). Nikitas was also a party both to the arbitration and to the circuit court action that led to the arbitration award's confirmation. That leaves as the critical question whether the issue of fraud was "actually litigated" in the relevant sense.

The answer is no. Although Illinois law on the subject is neither well-developed nor clear, it appears Illinois subscribes to the majority view that a default judgment cannot form the basis for collateral estoppel. *See In re Catt*, 368 F.3d 789, 791 (7th Cir. 2004) (noting that the opposing view, apparently held in Indiana, is the minority). This is so because by definition nothing is "actually litigated" when a default is entered; the defendant loses because he fails to defend, not on the merits of the case itself. *See Arizona v. California*, 530 U.S. 392, 414 (2000) (calling this "basic res judicata doctrine"); *Restatement (Second) of Judgments* § 27 (1982).

The Illinois Supreme Court has yet to address the collateral estoppel effect of default judgments, coming no closer than its observation in *Y.M.C.A.* that "[s]ome courts have held that default judgments have limited preclusive effects under the doctrine of collateral estoppel." *See*

*Y.M.C.A.*, 101 Ill. 2d at 254, 461 N.E.2d at 963. In what appears to be the sole intermediate appellate decision on the subject, though, the Illinois Appellate Court squarely held that a default judgment has no collateral estoppel effect. In *S & S Automotive v. Checker Taxi Co.*, 166 Ill. App. 3d 6, 520 N.E.2d 929 (1st Dist. 1988), the court declined to find that a default judgment on the question of coverage in an insurer's declaratory judgment action barred the plaintiffs in a later negligence action from disputing questions of agency. The court read the otherwise neutral statement in *Y.M.C.A.* as signaling "strong support" for the rule that default judgments have no collateral estoppel effect. *Id.* at 9, 520 N.E.2d at 931-32. Citing this rule and the requirement that an issue must have been "actually litigated," the court declared: "We find that collateral estoppel does not apply here because the agency issue was not actually litigated prior to the entry of the default judgment." *Id.* at 8, 520 N.E.2d at 930.

No other Illinois decision has directly addressed the subject. The principal and most recent decision purporting to do so, *In re Paternity of Rogers*, 297 Ill. App. 3d 750, 697 N.E.2d 1193 (2nd Dist. 1998), does declare that collateral estoppel may be applied "even where a default judgment has been entered provided no injustice results from the application of the doctrine." *Id.* at 755, 697 N.E.2d at 1197. But that declaration was dicta: the court in *Rogers* held that the judgment in the earlier action barred the second action on the basis of res judicata. *Id.* The court mentioned collateral estoppel only as an additional and alternative ground for its decision. *See id.* at 755-56, 697 N.E.2d at 1197-98.

Even that ground was questionable. The decisions the *Rogers* court cited for its declaration – *Herriford v. Boyles*, 193 Ill. App. 3d 947, 550 N.E.2d 654 (3rd Dist. 1990), and *Coronet Ins. Co. v. Booker*, 158 Ill. App. 3d 466, 511 N.E.2d 793 (1st Dist. 1987) – in fact provide no support. *Herriford* did not involve a default: the earlier action claimed to have

-6-

collateral estoppel effect on the question of damages was an arbitration at which the question was actually litigated and decided. *Herriford*, 193 Ill. App. 3d at 948-49, 550 N.E.2d at 656. The opinion nowhere indicates that the opposing party failed to appear and contest the claim. *Coronet* did involve a default judgment – in fact two, one in an arbitration and another in a later circuit court action. *Coronet*, 158 Ill. App. 3d at 467, 511 N.E.2d at 795. But *Coronet*'s holding is limited to the timing of the motion to vacate the circuit court default; only after ruling on that issue (and commenting that it "need not address the merits") did the court reach the collateral estoppel effect of the default in the arbitration. *Id.* at 470-71, 511 N.E.2d at 796-97. The cursory discussion that followed, all of it dicta, did not mention either the "actually litigated" requirement or the usual rule that default judgments have no collateral estoppel effect.[4/] *Id.* at 471, 511 N.E.2d at 796-97.

The other Illinois decision occasionally cited for the proposition that collateral estoppel applies to default judgments, *Grisanzio v. Bilka*, 158 Ill. App. 3d 821, 511 N.E.2d 762 (2nd Dist. 1987), is even less relevant and helpful. *Grisanzio* did involve a default judgment, and the court did discuss the doctrines of res judicata and collateral estoppel at some length. *Id.* at 824-27, 511 N.E.2d at 764-66. In the end, though, the court based its decision, not on collateral estoppel, but on res judicata: "[A]lthough the judgment against the corporation was by default, it is entitled to the same preclusive effect under the doctrine of *res judicata* as any other judgment." *Id.* at 827, 511 N.E.2d at 766; *see also id.* at 829, 511 N.E.2d at 767 (stating that "the second suit being barred by the doctrine of *res judicata*, the decision of the trial court should be affirmed").

---

[4/] In both *Herriford* and *Coronet*, moreover, collateral estoppel was invoked against a party who had *participated* in an arbitration and obtained an award, not against a party who defaulted by failing to participate. *See Herriford*, 193 Ill. App. 3d at 953-54, 550 N.E.2d at 659; *Coronet*, 158 Ill. App. 3d at 470-71, 511 N.E.2d at 796-97.

-7-

Given the sparse and confusing authority on the subject, faulty assessments of Illinois law on collateral estoppel and default judgments are common. Citing *Rogers* and *Grisanzio*, the Fifth Circuit mistakenly concluded that "the doctrine of collateral estoppel may be applied to default judgments under Illinois law." *See Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1028 (5th Cir. 1998). Without discussing *S & S Automotive*, a Missouri bankruptcy court wrongly decided that a split among Illinois bankruptcy courts over the collateral estoppel effect of default judgments represented the state of the law in Illinois. *Meyer v. Asbury (In re Asbury)*, 195 B.R. 412, 416 (Bankr. E.D. Mo. 1996) (noting that the court "found no Illinois cases which have decided whether a default judgment satisfies the 'actually litigated' requirement under Illinois law").

But the bankruptcy court decisions in this area are not reliable indicators of Illinois law, either. More often than not, the decisions fail to mention state law and instead apply the federal rule that default judgments have no collateral estoppel effect. *See, e.g., Walker v. Contimortgage (In re Walker)*, 232 B.R. 725, 732-33 (Bankr. N.D. Ill. 1999); *Schaffer v. Dempster (In re Dempster)*, 182 B.R. 790, 799 (Bankr. N.D. Ill. 1995); *Bishop v. Herwig (In re Herwig)*, 77 B.R. 662, 664 (Bankr. S.D. Ill. 1987). In a case reaching the opposite result, the court mistakenly relied on *Y.M.C.A* and *Grisanzio* (neither of which addressed the question) for the proposition that in Illinois "a judgment by default is entitled to the same preclusive effect as any other judgment." *Illinois Dep't of Employment Sec. v. Winston (In re Winston)*, 114 B.R. 566, 571 (Bankr. N.D. Ill. 1990).

In light of the Illinois courts' repeated statement that an issue must have been "actually litigated" in a genuinely adversarial proceeding before it can be preclusive, *see, e.g., Taylor*, 275 Ill. App. 3d at 663, 656 N.E.2d at 141, and with *S & S Automotive* the only decision truly

-8-

addressing the collateral estoppel effect of default judgments, the most reasonable conclusion is that Illinois adheres to the majority rule: default judgments have no collateral estoppel effect.

That conclusion forecloses Clear Channel's effort to obtain summary judgment on the basis of collateral estoppel. The motion is based on an award from an arbitration hearing where Nikitas defaulted, an award subsequently confirmed in a circuit court action where Nikitas also defaulted. Summary judgment is foreclosed even though Clear Channel presented evidence in the arbitration on which the arbitrator based his award. A proceeding of that kind is not a trial but rather "a travesty of a trial, lacking . . . an adversary dimension." *Catt*, 368 F.3d at 792. It is "no better, really, than a default proceeding." *Id.* (holding, however, that such a proceeding is enough under Indiana preclusion law).

Neither the arbitration nor the circuit court action here was a proceeding where "the parties disputed the issue[s] and the trier of fact resolved [them]." *Taylor*, 275 Ill. App. 3d at 663, 656 N.E.2d at 141. Therefore, the issues in those proceedings were not "actually litigated" as the doctrine of collateral estoppel requires. *Williams*, 138 Ill. 2d at 393, 563 N.E.2d at 392. Clear Channel's motion must be denied.

### 4. Conclusion

The motion of Clear Channel Outdoor, Inc. for summary judgment on its adversary complaint against debtor James Nikitas is denied. A separate order will be entered consistent with this opinion.

Dated: June 6, 2005

ENTER: _____
A. Benjamin Goldgar
United States Bankruptcy Judge